UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 23-MJ-6 |
| | : | |
| MICHAEL BLACKSON, | : | |
| | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S MEMORANDUM
### IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the Defendant be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving possession of a firearm), and 18 U.S.C. § 3142(d)(1)(A)(iii) (probation/parole for any offense) of the federal bail statute. The Government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pretrial detention.

**I.      Procedural History and Applicable Authority**

The Defendant was arrested on January 9, 2023, by Metropolitan Police Department ("MPD") Officers, after a firearm and ammunition were found on his person. The Defendant was charged in D.C. Superior Court with offenses related to illegal possession of the firearm and ammunition. On January 10, 2023, this Court authorized a criminal complaint and arrest warrant charging the Defendant with a violation of 18 U.S.C. § 922(g)(1) (Possession of a Firearm by a Person Convicted of a Crime Punishable by a Term of Imprisonment Exceeding One Year).

1

At the initial appearance on January 11, 2023, the Government will move for detention pending trial pursuant to the above-mentioned subsections of the Bail Reform Act.

A Defendant must be detained pending trial, if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(e). A finding of either risk of flight or danger is sufficient for detention. *See, e.g., United States v. Ferranti*, 66 F.3d 540, 543-44 (2nd Cir. 1995). For a detention decision based upon a defendant's dangerousness, the government must prove by clear and convincing evidence that there are no conditions or combinations of conditions that will assure the safety of the community. *See* 18 U.S.C. § 3142(f); *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996). Furthermore, at a detention hearing, the government may present evidence by way of a proffer. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996). In considering whether there are conditions of release, which will reasonably assure the safety of any other person and the community, and the appearance of the defendant as required, the Court should consider and weigh the following factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). As set forth more fully below, these factors weigh in favor of detaining the defendant.

II.     **Nature and Circumstances of the Offense Charged**

On or about January 9, 2023, at approximately 1:17 a.m., MPD Officers were dispatched to the intersection of South Capitol St. SE and Halley Place, in Washington D.C. MPD Officers arrived at the location in a marked vehicle and saw a running vehicle parked in the center lane of South Capitol Street for a prolonged period while the traffic signal was green. MPD Officers

parked behind the stopped vehicle and activated the emergency lights to provide more visibility and safety.  The Officers approached the vehicle and noticed that the odor of marijuana increased as they got closer.  The Defendant was observed slumped over the wheel of the vehicle and appeared to be sleeping.  The dashboard of the vehicle displayed the letter 'D' for 'Drive,' and the Defendant's foot was on the brake.  Noticeably, there was a bulge in the Defendant's pants, and he had both hands resting over it.

Officers attempted to awaken the Defendant by knocking on the vehicle and windows, and by shaking the vehicle.  During these attempts, the Defendant was coming in and out of consciousness and at one point released the brake, causing the vehicle to nearly drive into the intersection of South Capitol Street and Halley Place SE.  Seemingly disoriented, the Defendant did not listen to the instructions from the Officers.  After Officer Yeilen Fernandez illuminated his badge with his flashlight, the Defendant placed the vehicle in park, and lowered his front passenger side window.  He then exited the vehicle and followed law enforcement's instructions to move behind the vehicle.

Officer Fernandez approached the Defendant to pat him down for weapons due to the bulge observed in the center of the pants earlier.  Due to Officer Fernandez's prior experience with firearms, to include four years of extensive training with weapons in the Marine Corps infantry and working as a Patrol Officer in the Seventh Police District, he recognized that he felt a lower receiver of a firearm while patting down the Defendant.  Officer Fernandez lifted the Defendant's shirt and immediately recognized the end of a firearm protruding from the Defendant's pants.  Officer Fernandez removed the firearm from the Defendant's person.

The firearm appeared to be fully functional and was designed to expel a projectile by the action of an explosive.  A WALES/NCIC inquiry was conducted on the firearm, revealing that

the firearm was unregistered.  The firearm and ammunition in this case were manufactured outside of the District of Columbia, and therefore traveled in interstate commerce.  The Defendant was placed under arrest for Felon in Possession, and other firearms and ammunition charges.

While the Defendant was in custody, a criminal history check was conducted, and it revealed that he had prior felony convictions for Murder II While Armed, Possession of a Firearm During a Crime of Violence, and Carrying a Pistol without a License Outside the Home/Business, in the Superior Court for the District of Columbia under case number 2005-FEL-003672, where he was sentenced to 33 years in prison and 12 months of supervised probation.  The Defendant had additional felony convictions for Unarmed Carjacking While Armed and Carrying Pistol without a License Outside the Home/Business in Superior Court of the District of Columbia under case number 2005-FEL-002436 and was sentenced to 11 years and 8 months in prison, followed by three years supervised release.  As having served time in prison, Jackson was aware at the time of his arrest in this case that he had prior convictions for crimes punishable by a term of imprisonment exceeding one year.  The nature of this firearm offense weighs in favor of detention.

### III.   Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention.  The evidence against the Defendant is strong. The firearm was recovered from the Defendant's pants after MPD Officers detained him.  The firearm was found in the Defendant's actual possession.  There were no other occupants in the vehicle that could claim ownership of the firearm and ammunition.

## IV. Defendant Blackson's History and Characteristics

The third factor, the history and characteristics of the person, similarly weigh heavily in favor of detention. The Defendant's criminal history is indicative of a violent, recidivist offender – including prior convictions for second degree murder while armed, carjacking, and related firearms offenses.

As it relates to the second-degree murder, on June 30, 2005, the Defendant was arrested for the murder of Lavelle James, a 16-year-old who was killed by a single gunshot wound to the head on April 24, 2005. Earlier that night, there was an altercation at a night club between two groups of people. Club security deescalated the altercation and the participants left the area and went to their vehicles. A witness on scene relayed that the victim was riding in the passenger seat of one of the vehicles. At some point, another vehicle, which held the Defendant, pulled up to the victim's vehicle, and the Defendant shot into the passenger's seat, striking the victim in the head. The case proceeded to a jury trial and the Defendant was convicted on all counts, to include: (1) one count of Second-Degree Murder, (2) one count of Possession of a Firearm During a Crime of Violence, and (3) one count of Carrying a Pistol without a License. On November 3, 2006, the Defendant was sentenced to 33 years imprisonment. A term of supervised release of five years was also imposed.

On April 29, 2005, only several days after shooting and killing Lavelle James, the Defendant was arrested after MPD Officers received word that a man committed an armed carjacking off Florida Ave., Washington D.C., N.W. The victim relayed that the Defendant opened the driver's side door while displaying a firearm and ordered the victim to exit the vehicle. The victim complied and the Defendant drove away in the stolen car with another

unidentified person occupying the passenger seat. MPD broadcast a lookout for the stolen vehicle. Upon spotting the vehicle, which then contained three individuals, MPD Officers attempted to make a traffic stop; however, the Defendant did not comply. After a short foot pursuit, Officers apprehended the Defendant while the other two individuals escaped. The Defendant pled guilty to: (1) one count of Carjacking; (2) one count Carrying a Pistol without a License; and (3) one count Threats to do Bodily Harm. On November 3, 2006, the Honorable Brian Holeman sentenced the Defendant to an aggregate term of 140 months, followed by three (3) years supervised release. The sentence was to run consecutively to any other sentence, to include the sentence in the previous conviction. In total, the Defendant was sentenced to a term of imprisonment of 44 years and 8 months.

After he successfully filed a motion to reduce his sentence based on the Incarceration Reduction Amendment Act, the Defendant was released from the Federal Bureau of Prisons on May 13, 2022. According to Supervision and Management Automated Record Tracking System (SMART) records, the Defendant's supervision period is May 12, 2022, to May 11, 2023. Additionally, the Defendant failed to report to his last office visit on January 3, 2023. Significantly, the Defendant was released from custody only eight months ago and was already found in possession of a firearm.

## V.     Danger to the Community

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention. The charged offense involves the Defendant's possession of a loaded firearm, despite being legally barred from such a possession. The Defendant's violent criminal history coupled with his possession of

a loaded firearm while on supervision, overwhelmingly demonstrate that he is a danger to the community.  Many courts have recognized the inherent dangerousness of carrying a concealed, loaded firearm on one's person.  *See United States v. Gassaway*, 1:21-cr-00550 (RCL), ECF No. 9 (D.D.C. Sept. 16, 2021) ("This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public).  *See United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020) ("[T]he possession of a firearm, especially while seemingly on a drug such as PCP, presents a serious danger to the community."); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community.")  This factor, as with the three prior factors, weighs in favor of the Defendant being held without bond pending trial.

**IV.     There is No Condition or Combination of Conditions that Would Ensure Defendant's Appearance or Compliance with Court Release Conditions**

At the time of the instant offense, the Defendant was being supervised, but that supervision did not ultimately serve to deter him from unlawfully possessing a firearm and ammunition.  The Defendant's inability to comply with the terms of his supervision, strongly supports the Government's argument that he will continually circumvent the Court's efforts to reasonably control his behavior through conditions of release and keep the community safe.

**<u>Conclusion</u>**

The Court should grant the Government's motion to detain the Defendant pending trial because he has demonstrated that he is a danger to the community.

Respectfully Submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052


By: __/s/ *Christine Pattison*
Christine Pattison
Special Assistant United States Attorney
MI Bar No. P82979
601 D Street N.W.
Washington D.C. 20530
Telephone: (925) 336-1006
Email: cpattison@usa.doj.gov